

**SIGNED this 06 day of July, 2007.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE

In re

     KENNETH RECTOR HILL,            No. 06-50972
                          Debtor.            Chapter 13

## M E M O R A N D U M

APPEARANCES:

    Christopher M. Kerney, Esq.       Robert Payne Cave, Esq.
    424 Church Street, Suite 1505    104 North College Street
    Nashville, Tennessee 37219       Greeneville, Tennessee 37662
    *Attorney for DiamlerChrysler*     *Attorney for Kenneth Rector Hill*
     *Financial Services Americans, LLC*

**MARCIA PHILLIPS PARSONS**
**UNITED STATES BANKRUPTCY JUDGE**

This chapter 13 case is before the court on the objection to confirmation filed by DaimlerChrysler Financial Services Americas, LLC ("DaimlerChrysler"). Because this court reaffirms its decision in *In re Gentry*, No. 06-50204, 2006 WL 3392947 (Bankr. E.D. Tenn. Nov. 22, 2006), that § 1325(a) of the Bankruptcy Code permits a debtor to surrender a "910 motor vehicle" in full satisfaction of the debt, DaimlerChrysler's objection will be overruled. This is a core proceeding. *See* 28 U.S.C. 157(b)(2)(L).

## I.

The debtor, Kenneth Rector Hill, filed for bankruptcy relief under chapter 13 on October 20, 2006. In his Third Amended Plan filed March 1, 2007, the Debtor proposes surrender of a 2004 Dodge pickup to DaimlerChrysler "in full payment of debt and in full satisfaction and accord." The Debtor's plan was met with an objection from DaimlerChrysler, who asserted that the Debtor's proposed treatment of its claim was prohibited by the unnumbered paragraph which follows § 1325(a)(9) of the Bankruptcy Code. After a hearing on the objection, at which counsel for the parties announced to the court that there were no facts in dispute, this court entered an order on April 19, 2007, setting deadlines for the parties to file briefs on the legal issues and a joint statement as to the legal issue(s) to be decided by the court and stipulations of fact.

In the Amended Joint Stipulations of Facts and Issues filed April 26, 2007, the parties stipulated that DaimlerChrysler is a creditor of the Debtor by virtue of a retail installment contract dated August 28, 2004, with respect to a 2004 Dodge Dakota; DaimlerChrysler holds a validly perfected, first priority security interest in the motor vehicle; the Debtor purchased the vehicle for his personal use; the vehicle was acquired within the 910-day period preceding the Debtor's bankruptcy filing on October 20, 2006; and the amount due and owing DaimlerChrysler by the Debtor is $10,817.28. As phrased by the parties, the issue presented by DaimlerChrysler's objection to the Debtor's proposed plan is:

> Whether 11 U.S.C. § 1325(a)(5), as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005, effective on October 17, 2005, allows the Debtor[] to surrender DaimlerChrysler's collateral as fully secured and disallows any portion of Creditor's claim as unsecured, and in full satisfaction of the Creditor's claim.

2

II.

As discussed in this court's memorandum opinion entered on November 22, 2006, in the *Gentry* case, a copy of which is attached and incorporated, § 1325(a) of the Bankruptcy Code was amended by BAPCPA, with the most conspicuous change being the addition at the end of the subsection of an unnumbered paragraph that provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

*See* 11 U.S.C. § 1325(a).

In *Gentry*, this court adopted Bankruptcy Judge Richard Stair's decision in *In re Ezell*, 338 B.R. 330 (Bankr. E.D.Tenn. 2006), wherein the court concluded that § 1325(a)'s "hanging" paragraph, along with BAPCPA's other statutory changes, results in the elimination of a deficiency claim when a debtor proposes, under § 1325(a)(5)(C), to surrender collateral falling within the stated parameters of the hanging paragraph, i.e., a "910 claim." This court noted in *Gentry* that the majority of courts considering the issue since *Ezell* have adopted or agreed with its analysis.

DaimlerChrysler's objection in the instant case is an invitation to the court to revisit its *Gentry* decision adopting *Ezell*. A review of the decisions rendered by other courts in the preceding seven months since *Gentry* indicate that the majority continue to agree with *Ezell*, although a split of authority on the issue continues to exist. *See In re Osborn*, 363 B.R. 72 (8th Cir. BAP 2007); *In re Price*, ___ B.R. ___, 2007 WL 1087036 (Bankr. M.D. Pa. Mar. 5, 2007); *In re Pinti*, 363 B.R. 369 (Bankr. S.D.N.Y. 2007); *In re Durham*, 361 B.R. 206 (Bankr. D. Utah 2006); *In re Quick*, 360 B.R. 722 (Bankr. N.D. Okla. 2007); *In re Moon*, 359 B.R. 329 (Bankr. N.D. Ala. 2007); *In re Feddersen*, 355 B.R. 738 (Bankr. S.D. Ill. 2006); *In re Turkowitch*, 355 B.R. 120 (Bankr. E.D. Wis. 2006); *In re Kenney*, No. 06-71975-A, 2007 WL 1412921 (Bankr. E.D. Va. May 10, 2007); *In re Roth*, No. 06-11330, 2007 WL 1385383 (Bankr. N.D. Ind. May 4, 2007); *In re Bivins*, No. 06-51778, 2007 WL 624385 (Bankr. M.D. Ga. Feb. 23, 2007); *In re Maggett*, No. BK06-80573, 2006 WL

3478991 (Bankr. D. Neb. Oct. 19, 2006) (all permitting surrender in full satisfaction); *but see In re Wright*, ___ F.3d. ___, 2007 WL 1892502 (7th Cir. July 3, 2007); *In re Blanco*, 363 B.R. 896 (Bankr. N.D. Ill. 2007); *In re Clark*, 363 B.R. 492 (Bankr. N.D. Miss. 2007); *In re Morales*, 359 B.R. 211 (Bankr. N.D. Ill. 2007); *In re Hoffman*, 359 B.R. 163 (Bankr. E.D. Mich. 2006); *In re Dominguez*, No. 06-31167-RCM, 2007 WL 1394158 (Bankr. W.D. Tex. May 11, 2007) (all holding that deficiency claim can not be eliminated). This court finds nothing in these decisions or in the brief filed by DaimlerChrysler that convinces this court that either *Gentry* or *Ezell* was erroneously decided.

Accordingly, as concluded in both cases, this court reaffirms that a chapter 13 debtor may surrender collateral of a creditor holding a 910 claim in full satisfaction of the debt. The parties herein have stipulated that the Debtor's obligation to DaimlerChrysler was incurred within the 910-day period preceding the Debtor's bankruptcy filing and that the collateral is a motor vehicle, acquired for the personal use of the Debtor. Although the parties agree that DaimlerChrysler holds a "validly perfected, first priority security interest" in the vehicle, they have not stipulated that DaimlerChrysler has a "purchase money security interest securing the debt," as required by the language of § 1325(a)'s hanging paragraph. Nonetheless, counsel for the parties indicated at the hearing in this matter that DaimlerChrysler holds a 910 claim, and their briefs are predicated on this assertion. As such, this court will assume for purposes of this opinion that DaimlerChrysler does in fact hold a 910 claim, and on this basis, the court will overrule DaimlerChrysler's objection to confirmation of the Debtor's proposed plan.

On a final note, this court observes that the parties have not stipulated the value of the 2004 Dodge Dakota, nor have they stipulated that the value is less than the amount owed by the Debtor, such that surrender of the vehicle will result in a deficiency balance after a foreclosure sale. To the contrary, DaimlerChrysler asserts in its proof of claim filed on October 27, 2006, that the value of its collateral is $10,817.28, the same amount owed on the debt. Assuming this is the case, this fact presents an alternative basis for overruling DaimlerChrysler's objection to the Debtor's plan. Even under pre-BAPCPA, there was no impediment to surrender in full satisfaction of a claim if the collateral was worth at least as much as owed on the debt such that surrender would not produce a deficiency. *See In re Roth*, 2007 WL 1385383, *3 ("Prior to BAPCPA, it was entirely proper to

4

surrender a creditor's collateral in full satisfaction of its claim where the court determined that the value of the property being surrendered at least equaled the debt.") (citing 2 Keith M. Lundin, *Chapter 13 Bankruptcy* § 102.1, pp. 102-11–102-12 (3rd ed. 2006).

Based on all of the foregoing, this court will enter an order overruling DaimlerChrysler's objection to the Debtor's proposed plan.

[This court's memorandum opinion in *Gentry* is attached.]

# # #

**SIGNED this 22 day of November, 2006.**

_____
**Marcia Phillips Parsons**
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TENNESSEE

In re

    ELGIN F. GENTRY, SR. and             No. 06-50204
    SANDRA KAY GENTRY,               Chapter 13

               Debtors.

### M E M O R A N D U M

APPEARANCES:

    Robert Payne Cave, Esq.
    104 North  College Street
    Greeneville, Tennessee 37743
    *Attorney for Elgin and Sandra Gentry*

    O. Taylor Pickard, Jr., Esq.
    Wilson Worley Moore Gamble & Stout PC
    Post Office Box 88
    Kingsport, Tennessee 37662
    *Attorney for Eastman Credit Union*

    Alan C. Lee, Esq.
    Post Office Box 1357
    Morristown, Tennessee 37816-1357
    *Attorney for Amicus Curiae*
    *National Association of Consumer Bankruptcy Attorneys*

**MARCIA PHILLIPS PARSONS**
**UNITED STATES BANKRUPTCY JUDGE**

The objection to confirmation of the debtors' proposed chapter 13 plan presently before the court presents an issue arising out of BAPCPA: whether a "910 secured creditor" whose collateral is being surrendered in full satisfaction of the debt under § 1325(a)(5) of the Bankruptcy Code is also an unsecured creditor entitled to the protection afforded by § 1325(a)(4).   For the reasons set forth below, the court answers the question in the negative.   This is a core proceeding.   *See* 28 U.S.C. § 157(b)(2)(L).

I.

The debtors Elgin and Sandra Gentry filed for bankruptcy relief under chapter 13 on March 24, 2006.   On the following day, the debtors filed their proposed chapter 13 plan providing for 100% payment of all unsecured, nonpriority debts.   The plan also provided for the surrender, "in full payment of debt and in full satisfaction and accord," of a 2005 GMC Yukon held as collateral for a debt owed to Eastman Credit Union ("ECU").   ECU timely objected to confirmation, asserting that the plan's failure to provide for a deficiency claim upon the debtors' surrender of its collateral was a violation of 11 U.S.C. § 1325(a)(4),[1] which provides that an allowed unsecured claim must receive in a chapter 13 no less than it would receive if the case were a chapter 7.   According to ECU's objection, it is "the holder of a claim of $49,835.75, being the balance used on an advance of $50,604.59 made to Debtor[s] on Loanliner Credit Agreement dated June 24, 2005, . . . and Loan and Security Agreements and Disclosure Statement dated June 24, 2005"; "the value of the 2005 Chevrolet Suburban[2] securing its claim is $26,375; and "ECU thus holds a secured claim in the amount of $26,375 and an unsecured claim in the amount of $23,460.73."   ECU argues that while surrender is a permissible treatment of its secured claim, the debtors' failure to provide for payment of its unsecured claim is contrary to § 1325(a)(4) because the debtors' schedules reveal that

---

[1] (a) Except as provided in subsection (b), the court shall confirm a plan if–
. . . .
(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]
11 U.S.C. §1325(a)(4).

[2] It appears from the certificate of title that the motor vehicle on which ECU holds a lien is actually a 2005 GMC Yukon as identified in the debtors' plan.

2

unsecured creditors, including ECU, would be paid in full if this were a chapter 7 case due to equity in the debtors' real property. Consistent with this assertion, ECU thereafter filed a proof of claim which provides that ECU holds a secured claim on a motor vehicle with a value of $26,375 and an unsecured, nonpriority claim of $23,460.73.[3]

In response to the confirmation objection, the debtors requested that the court overrule the objection on the basis that "the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") mandates that creditors be treated as fully secured for both cramdown and surrender purposes. The surrender of the Debtors' vehicle will fully satisfy creditor's claim and creditor can have no claim, whether secured or unsecured, for any deficiency . . . ." In support of this proposition, the debtors cite the *Ezell* decision by Bankruptcy Judge Richard Stair. *In re Ezell*, 338 B.R. 330 (Bankr. E.D. Tenn. 2006).

At a hearing on the objection and the response, the parties announced to the court that there were no facts in dispute and agreed that the objection turned on an issue of law. Thereafter, the court set a deadline for the filing of stipulations of fact and memoranda of law. Due to the novel issue presented by the case, the National Association of Consumer Bankruptcy Attorneys ("NACBA") sought and was granted permission to intervene for purposes of filing an *amicus curiae* brief.

Stipulations and briefs have now been filed. The parties agree that at the time of filing their petition, the debtors owed ECU $49,835.73; the debt is secured by a purchase money security interest in the vehicle that was incurred on June 24, 2005, within 910 days preceding the petition date; and the vehicle was acquired by the debtors for their personal use. The parties also agree that the value of the vehicle is less than the amount owed by debtors to ECU and that if this were a case under chapter 7, there would be sufficient assets in the estate to pay all unsecured claims in full.

---

[3] While the issues raised in this contested matter were under advisement with this court, the debtors filed an objection to ECU's proof of claim, asserting, for the reasons discussed hereafter, that ECU does not hold an unsecured claim. That objection is presently set for hearing.

II.

ECU's assertion that it holds both a secured claim and an unsecured claim is predicated on § 506(a) of the Bankruptcy Code, which is entitled "Determination of secured status." Prior to BAPCPA, it was clear that "[s]ection 506 . . . govern[ed] the definition and treatment of secured claims, *i.e.*, claims by creditors against the estate that are secured by a lien on property in which the estate has an interest. Subsection (a) of § 506 provide[d] that a claim [wa]s secured only to the extent of the value of the property on which the lien is fixed; the remainder of that claim [wa]s considered unsecured."[4] *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 238-39, 109 S. Ct. 1026, 1029 (1989). "Thus, a $100,000 claim, secured by a lien on property having a value of $60,000, [wa]s considered to be a secured claim to the extent of $60,000, and to be an unsecured claim for $40,000." *Id.* at 240 n.3 (citing 3 *Collier on Bankruptcy* ¶ 506.04 (15th ed. 1988)) ("Section 506(a) requires a bifurcation of a 'partially secured' or 'undersecured' claim into separate and independent secured claim and unsecured claim components."). To the extent the secured component was otherwise allowed under 11 U.S.C. § 502(a),[5] the secured part of the claim became an "allowed secured claim," while the unsecured component constituted an "allowed unsecured claim." *Id.*

Moreover, it was understood that the permissible treatment in a chapter 13 plan of the two types of claims was governed by § 1325(a) of the Bankruptcy Code. (" [T]he court shall confirm a plan if . . . ." 11 U.S.C. § 1325(a)). Paragraph (4) of § 1325(a) set forth the required treatment

---

[4] The pre-BAPCPA version of §506(a) provided the following:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to set off is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.
11 U.S.C. §506(a).

[5] Section 502(a) of the Bankruptcy Code, which was not amended by BAPCPA, provides: "A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest, including a creditor of a general partner in a partnership that is a debtor in a case under chapter 7 of this title, objects."

4

of an allowed unsecured claim, which as previously noted, mandated that the creditor receive under the plan at least as much as the creditor would receive if the case were one under chapter 7, a requirement generally known as the "best interests of creditors test."  8 *Collier on Bankruptcy* ¶ 1325.05 (15th ed. rev. 2005).  Paragraph (5) of § 1325(a) addressed treatment of allowed secured claims and offered a debtor three plan options: (1) convince the holder of the allowed secured claim to accept the treatment proposed by the debtor (§ 1325(a)(5)(A)); (2) provide in the plan that the holder of the allowed secured claim would retain its lien and be paid periodic payments during the plan which had a present value equal to the amount of the allowed secured claim (§ 1325(a)(5)(B)); or (3) surrender the collateral to the holder of the allowed secured claim (§ 1325(a)(5)(C)).  *Assoc. Comm. Corp. v. Rash*, 520 U.S. 953, 956-57, 117 S. Ct. 1879, 1882-83 (1997).  The second option was generally known as the cramdown option because it permitted a debtor, over the creditor's objection, to take advantage of the bifurcation process of § 506(a) by paying only the "allowed secured" component of the creditor's claim as determined by reference to § 506(a), with the allowed unsecured portion only receiving what other unsecured creditors receive.  *Id.*  When the debtor proceeded under the cramdown option, the amount of the allowed secured claim, i.e., the value of the collateral, was specified in the plan and was often a point of contention between the parties during the confirmation process.  On the other hand, if the debtor chose option three, deciding to surrender the collateral in satisfaction of the allowed secured component, it was the general practice for the plan to not specify the value of the collateral, but rather for the amount of the allowed secured claim to be determined by the value received by the creditor at a liquidation sale which usually followed the surrender of the collateral.  The deficiency balance remaining after the sale would constitute the creditor's allowed unsecured claim.  4 *Collier on Bankruptcy* ¶ 506.03 (15th ed. rev. 2006).

It was against this backdrop that Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCAP"), Pub. L. No. 109-8, 119 Stat. 23, which generally became effective for all cases filed on or after October 17, 2005, including the instant one.  Both § 506[6] and § 1325(a)[7] were amended by BAPCA, with the most conspicuous change being the

---

[6] A new paragraph was added to section 506(a) by BAPCA, with the previous subsection (a) now
(continued...)

5

addition of an unnumbered paragraph at the end of §1325(a) which provides as follows:

_____

[6](...continued)

being designated as paragraph (1) and the new paragraph as (2).  11 U.S.C. § 506(a) now reads:

(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim.  Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

(2) If the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing.  With respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age  and condition of the property at the time value is determined.

[7] 11 U.S.C. § 1325(a)(5) now provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if–

. . . .

(5) with respect to each allowed secured claim provided for by the plan–

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that–

(I) the holder of such claim retain the lien securing such claim until the earlier of–

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claiom; and

(iii) if–

(I)  property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount of sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder[.]

For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

As explained by one commentator, this "Hanging Paragraph" is "problematic" in that, subject to certain parameters, it precludes the application of § 506(a) to a claim described in paragraph (5) of § 1325(a), "allowed secured claim provided for by the plan," yet a claim only becomes an "allowed secured claim" by way of § 506(a)'s secured status determination. *See* Henry E. Hildebrand, III, *Impact of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 on Chapter 13 Trustees*, 79 Am. Bankr. L.J. 373, 386 n.65 (Spring 2005). In his treatise, *Chapter 13 Bankruptcy*, Bankruptcy Judge Keith Lundin queries how a claim becomes an allowed secured claim for purposes of § 1325(a)(5) without reference to § 506(a) since § 506(a) is the only provision of the Bankruptcy Code that addresses how an allowed claim becomes an allowed secured claim. Keith M. Lundin, *Chapter 13 Bankruptcy* ¶ 451.1 (3d ed. 2006).

Notwithstanding this conundrum, courts that have faced the issue have overcome the elimination of § 506 as a reference point for defining "allowed secured claim" when applying § 1325(a)(5) by either looking to state law to see if it fact the claim is secured, *see, e.g., In re DeSardi*, 340 B.R. 790, 812-13 (Bankr. S.D. Tex. 2006) ("This Court sees no reason to invent a new category of claim when the issue of secured status is easily settled by reference to state law."), or by coupling § 101(37) of the Bankruptcy Code, which defines "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation," with § 502's definition of when a claim is deemed allowed. *See, e.g., In re Brown*, 339 B.R. 818, 821 (Bankr. S.D. Ga. 2006). In reaching this conclusion, the *Brown* court observed that the United States Supreme Court stated in *Dewsnup v. Timm*, 502 U.S. 410, 415, 112 S. Ct. 773 (1992), that "the words 'allowed secured claim' [as used in § 506(d)] need not be read as an indivisible term of art defined by reference to § 506(a), *which by its terms is not a definitional provision*. Rather the words should be read term-by-term to refer to any claim that is, first, allowed, and second, secured." *Id.* (Emphasis supplied by *Brown*).

It has generally been agreed that the effect of the Hanging Paragraph's directive that "section 506 shall not apply to a claim described in [§1325(a)(5)]" serves to eliminate § 506(a)'s bifurcation of a secured claim into secured and unsecured components based on the value of the collateral for claims falling within the stated parameters, i.e., a "910 Claim." *See, e.g., In re Wampler*, 345 B.R. 730 (Bankr. D. Kan. 2006) (and cases cited at 734 n.8). The result in the cramdown option of §1325(a)(5)(B) is that a secured creditor's 910 Claim is not bifurcated and there is no cramdown to the value of the collateral. Instead, the creditor's allowed secured claim is now the full amount of the claim under state law. *Id. But see In re Carver*, 338 B.R. 521 (Bankr. S.D. Ga. 2006) (concluding that result of Hanging Paragraph is that a 910 Claim can not be treated as secured).

With regard to the impact of the Hanging Paragraph on the surrender option set forth in § 1325(a)(5)(C), Judge Stair concluded in *Ezell* that the Hanging Paragraph's "unambiguous mandate" results in the elimination of a secured claim's unsecured component, that is, its deficiency. *In re Ezell*, 338 B.R. at 341. As explained therein:

> The [Hanging] Paragraph serves to eliminate Revised §506 from the allowed secured/unsecured claim bifurcation treatment otherwise mandated by Revised § 506 with regard to those claims secured by a "motor vehicle" and "any other thing of value" falling within its provisions. In other words, when the creditor files its claim as secured, the [Hanging] Paragraph precludes the use of Revised § 506(a) to reduce or bifurcate that claim into secured and unsecured components. Unless the amount of the claim is subject to reduction for reasons other than collateral value, the creditor's allowed secured claim is fixed at the amount at which the claim is fixed.
>
> Accordingly, under Revised § 1325(a)(5), a creditor holding a secured claim falling within the scope of the [Hanging] Paragraph is fully secured for the amount of its claim, which is, in actuality, the debt owed. If the property is to be retained pursuant to Revised § 1325(a)(5)(B), the debtor must treat the entire claim as secured, and unless the creditor agrees to other treatment, must propose a plan that will pay the full amount of the claim as secured over the life of the plan. It only stands to reason that the same analysis is true when applied to surrender under Revised § 1325(a)(5)(C)—the creditor is fully secured, and surrender therefore satisfies the creditor's allowed claim in full.

*Id.* at 340.

Although noting that resort to legislative history was unnecessary in light of the plain language of the statute, the *Ezell* court nonetheless examined the Hanging Paragraph's legislative history, observing that while it "does not provide any particular insight that is helpful to the court

8

. . . , it also does not provide any evidence that the court's determination does not comport with Congressional intent when including the [Hanging] Paragraph in Revised § 1325(a)." *Id.*[8] In the absence of such evidence, the court held:

> Th[is] court has no choice but to interpret the [Hanging] Paragraph as written, *i.e.*, that it applies to both Revised § 1325(a)(5)(B) and (C). *See United States v. Ron Pair Enters.*, 489 U.S. 235, 109 S. Ct. 1026, 1030, 103 L.Ed 2d 290 (1989) (holding that if the language of a statute is plain and unambiguous, "the sole function of the courts is to enforce it according to its terms."). To apply the [Hanging] Paragraph only to Revised § 1325(a)(5)(B), but not to Revised § 1325(a)(5)(C), would allow a secured creditor, upon surrender of its collateral, to bifurcate its claim into different secured and unsecured components, contrary to its unambiguous mandate that Revised § 506 "shall not apply to a claim described in Revised §

---

[8] As cited by the *Ezell* court, relevant sections of the House of Representatives' Judiciary Committee Report dated April 8, 2005, state as follows:

> *Sec. 306. Giving Secured Creditors Fair Treatment in Chapter 13.* Subsection (a) of section 306 of the Act amends Bankruptcy Code section 1325(a)(5)(B)(i) to require–as a condition of confirmation–that a chapter 13 plan provide that a secured creditor retain its lien until the earlier of when the underlying debt is paid or the debtor receives a discharge. If the case is dismissed or converted prior to completion of the plan, the secured creditor is entitled to retain its lien to the extent recognized under applicable nonbankruptcy law.
>
> Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition. Where the collateral consists of any other type of property having value, section 306(b) provides that section 506 of the Bankruptcy Code does not apply if the debt was incurred during the one-year period preceding the filing of the bankruptcy case.

H.R. REP. NO. 109-31, pt. 1, at 71-72 (2005), *reprinted in* U.S.C.C.A.N. 88, 140.

The *Ezell* court also reported that under the section entitled "Highlights of Bankruptcy Reforms" concerning "Consumer Creditor Bankruptcy Protections," was the following paragraph:

> *Protections for Secured Creditors.* S. 256's protections for secured creditors include a prohibition against bifurcating a secured debt incurred within the 910-day period preceding the filing of a bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the debtor's person use. Where the collateral consists of any other type of property having value, S. 256 prohibits bifurcation of specified secured debts if incurred during the one-year period preceding the filing of the bankruptcy case. The bill clarifies current law to specify that the value of a claim secured by personal property is the replacement value of such property without deduction for the secured creditor's costs of sale or marketing.

H.R. REP. NO. 109-31, Pt. 1, at 17, *reprinted in* U.S.C.C.A.N. at 103. In the *Ezell* court's view, these statements "basically mirror[ed the Hanging Paragraph's] statutory language" and thus provided "no further clarification" of Congress' intent. *In re Ezell*, 338 B.R. at 340-41.

1325(a)(5)." 11 U.S. C. § 1325(a) (2005).

. . . .

In summary, the court finds that the [Hanging] Paragraph, as mandated by its terms, applies equally to both Revised § 1325(a)(5)(B) and Revised § 1325(a)(5)(C). Therefore, a creditor whose claim falls within the scope of the [Hanging] Paragraph is fully secured under Revised § 1325(a)(5)(C), regardless of the amount it might realize from the liquidation of its collateral upon surrender. Because application of § 506(a) is entirely removed from the picture, there can be no deficiency balance, either secured or unsecured, and surrender satisfies an allowed secured claim in full.

*In re Ezell*, 338 B.R. at 341-42.

The majority of courts considering the issue since *Ezell* have adopted or agreed with its analysis. *See In re Nicely*, 349 B.R. 600 (Bankr. W.D. Mo. 2006); *In re Evans*, 349 B.R. 498 (Bankr. E.D. Mich. 2006); *In re Osborn*, 348 B.R. 500 (Bankr. W.D. Mo. 2006); *In re Payne*, 347 B.R. 278 (Bankr. S.D. Ohio 2006); *In re Brown*, 346 B.R. 868 (Bankr. N.D. Fla. 2006); *In re Sparks*, 346 B.R. 767 (Bankr. S.D. Ohio 2006); *In re Pool*, ___ B.R. ___, 2006 WL 2801934 (Bankr. D. Or. Sept. 27, 2006); *but see In re Zehrung*, ___ F. Supp. __ , 2006 WL 3059908 (W.D. Wis. Oct. 16, 2006); *In re Duke*, 345 B.R. 806 (W.D. Ky. 2006); *In re Particka*, ___ B.R. ___, 2006 WL 3350198 (Bankr. E.D. Mich. Nov. 17, 2006).[9]

III.

In the instant case, ECU argues that notwithstanding BAPCPA, *Ezell* and its progeny, it is still entitled to bifurcate its claim into secured and unsecured components pursuant to § 506(a). Specifically, ECU notes that the Hanging Paragraph begins with the phrase "[f]or purposes of paragraph (5), section 506 shall not apply . . . ." According to ECU, this language only prohibits bifurcation when applying § 1325(a)(5) and bifurcation is still appropriate for applying the other requirements of confirmation, including § 1325(a)(4).

Alternatively, ECU contends that *Ezell* was wrongfully decided, that the Hanging Paragraph only applies in the cramdown scenario, § 1325(a)(5)(B), not in the surrender situation,

---

[9] The issue presented in *Ezell* is presently before the Sixth Circuit Court of Appeals, No. 06-0505, the court having accepted a direct appeal of another decision by Judge Stair, *In re Long*, 2006 WL 2090246 (Bankr. E.D. Tenn. Mar. 13, 2006), which adopted *Ezell*.

§ 1325(a)(5)(C).  ECU argues that prior to BAPCPA, the bifurcation process of § 506 was only utilized in a cramdown under § 1325(a)(5)(B) and that a commercially reasonable liquidation sale under the Uniform Commercial Code determined the secured portion of an allowed claim under § 1325(a)(B)(C).  "The hanging paragraph's elimination of the application of Section 506 to hanging paragraph claims thus has no effect on the determination of the values of secured claims and unsecured claims in a surrender under (a)(5)(C) because Section 506 has never been used in that situation."[10]

Addressing this last argument first, this court notes that, contrary to ECU's contention, "the bifurcation effected by § 506(a) was the source of the creditor's right to a deficiency claim prior to BAPCPA." *In re Nicely*, 349 B.R. at 604 (citing *In re Ezell*, 338 B.R. at 338).  As previously explained, § 506(a) split a state law secured claim into two components based on the value of the collateral with treatment of the secured claim in a chapter 13 plan governed by § 1325(a)(5)'s three options.  The surrender option, just like the cramdown option, only satisfied the allowed secured component.  The fact that valuation of the collateral was generally determined by a UCC liquidation sale rather than by the court is irrelevant.  Section 506(a) assigned the formula for the split; the sale was simply the process by which the formula was applied.  As stated by the court in *Ezell*:

> Clearly, Pre-BAPCPA § 506(a) was utilized to determine the amount of a creditor's allowed secured claim when the debtor utilized the cramdown provisions of Pre-BAPCPA § 1325(a)(5)(B).  As discussed, Pre-BAPCPA § 506(a) also came into play when the debtor, in compliance with Pre-BAPCPA § 1325(a)(5)(C), surrendered the collateral.  The creditor then liquidated its collateral which fixed the amount of its allowed secured claim at the liquidation value, and its allowed unsecured claim at the deficiency balance.
>
> The argument that Pre-BAPCPA § 506(a) had no application to surrender under Pre-BAPCPA § 1325(a)(5)(C) is misplaced.  Valuation of a creditor's allowed secured claim under pre-BAPCPA § 506(a) was "determined in light of the purpose of the valuation and of the proposed disposition or use of such property." 11 U.S.C § 506(a) (2004).  Upon surrender under  Pre-BAPCPA § 1325(a)(5)(C), liquidation value was clearly the yardstick by which the allowed secured claim was determined,

---

[10] In its brief, ECU raises the argument that the *Ezell* decision conflicts with 11 U.S.C. § 1322(b)(1), inasmuch as it would unfairly discriminate against holders of claims covered by the Hanging Paragraph by preventing such creditors from collecting on the unsecured portion of their claims.  For the same reasons as discussed hereafter for rejecting ECU's § 1325(a)(4) objection, this court finds ECU's § 1322(b)(1) argument unpersuasive.

while, for cramdown purposes under  Pre-BAPCPA § 1325(a)(5)(B), replacement value was the criteria.  *See Assoc. Commercial Corp. v. Rash*, 520 U.S. 953, 117 S. Ct. 1879, 138 L.Ed 2d 148 (1997).

*In re Ezell*, 338 B.R. at 339-340.

This court is in accord with *Ezell* and the courts adopting *Ezell* and respectfully disagrees with the courts in *Duke, Zehrung,* and *Particka*.  The *Duke* court, which did not address the *Ezell* decision, found the Hanging Paragraph to be ambiguous.  Discerning from the legislative history that Congress intended to provide more protection to creditors with purchase money security interests, the court refused to interpret the statutory language as eliminating a creditor's deficiency, concluding that if Congress had intended this abrogation of a creditor's state law remedies, "it would have made its intentions very clear in the statute."  *In re Duke*, 345 B.R. at 809.  However, the textual language chosen by Congress in the Hanging Paragraph establishes this intention.  *See In re Laurain*, 113 F.3d 595 (6th Cir. 1997) ("When we can discern an unambiguous and plain meaning from the language of a [statute], our task is at an end.").  "Allowing the secured creditor to assert a deficiency claim after disposition of the vehicle would permit the very thing which the hanging paragraph prohibits, which is bifurcation of the claim. . . . The hanging paragraph unambiguously provides that section is not longer applicable; bifurcation is, therefore, no longer appropriate."  *In re Nicely,* 349 B.R. at 603-04.  "Had Congress intended that the section 506 continue to apply to § 1325(a)(5)(C) it could have so stated.  It did not."  *In re Pool*, 2006 WL 2801934, *5.

The decisions in *Zehrung* and *Particka* were based on the proposition that "[s]ection 506 has application only when the estate retains an interest in the collateral, a circumstance which disappears with surrender." *In re Zehrung*, 2006 WL 3059908, *3; *see also In re Particka*, 2006 WL 3350198, *10 (quoting *Zehrung*).  However, as previously discussed, the pre-BAPCPA version of § 506(a) was not limited to the retention scenario.  By its terms, it plainly addressed both the retention and surrender situations since "value [of a secured creditor's collateral and thus the amount of its allowed secured claim] [was] to be determined in light of the purpose of the valuation and the proposed disposition or use of such property . . . ."  11 U.S.C. § 506(a).[11]  This language remains

---

[11] *See* footnote 4, *infra*.

unchanged by the BAPCPA amendments.

The applicability of § 506(a) to § 1325(a)(5)(C)'s surrender option was expressly recognized by the United States Supreme Court in *Rash*:

> As we comprehend § 506(a), the "proposed disposition or use" of the collateral is of paramount importance to the valuation question. . . . [T]he debtor has two options for handling allowed secured claims; surrender the collateral to the creditor . . . or, under the cram down option, keep the collateral over the creditor's objection and provide the creditor . . . with the equivalent of the present value of the collateral. . . . The "disposition or use" of the collateral thus turns on the alternative the debtor chooses–in one case the collateral will be surrendered to the creditor, and in the other, the collateral will be retained and used by the debtor.

*Rash*, 520 U.S. at 962. *See also In re Barclay,* 276 B.R. 276, 279-80 (Bankr. N.D. Ala. 2001) (citing *Rash* for the proposition that if a debtor in a chapter 13 proposes surrender, the method of valuation under § 506(a) would be foreclosure value); *In re UAL Corp.*, ___ F.3d ___, 2006 WL 284609, *4 (Bankr. N.D. Ill. October 5, 2006) ("[W]hen the [*Rash*] Court spoke of valuing collateral according to the debtor's 'proposed use,' it was distinguishing between retention and surrender . . . ."). Moreover, § 506(a) contemplates that valuation will occur prospectively since it provides that value is to be determined in light of the "*proposed* disposition or use." *See Rash*, 520 U.S. at 964 ('Section 506(a) calls for the value the property possesses in light of the 'disposition or use' in fact 'proposed' . . . .").

Finally, in this regard, the *Particka* court observed that the Hanging Paragraph does not by its terms deprive a secured creditor of its right under state law to an unsecured deficiency claim and the loss of this right does not follow from the mere fact that surrender is one of the three permissible treatments for a secured creditor under § 1325(a)(5). *In re Particka*, 2006 WL 3350198, *10. The response to this observation is that § 1322(b)(2) expressly gives a debtor the ability to modify a secured claim (other than a claim secured only by the debtor's principal residence), with § 1325(a) providing the permissible limits on such modification. *Id.* In addition, § 1322(b)(8) states that the plan may "provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor." Under § 1325(a)(5)(C), an allowed secured claim is paid by the surrender of the collateral. Previously, the unsecured portion of a secured creditor's claim, that is, its right to a deficiency was preserved by § 506(a). The Hanging Paragraph's directive that § 506

13

has no application to a 910 Claim eliminated this preservation, with the result that there is no longer
a provision in the Bankruptcy Code that provides a deficiency to a 910 Claim secured creditor upon
the surrender of the collateral in accordance with § 1325(a)(5)(C).  The fact that a creditor has
certain rights under state law is not necessarily determinative of its rights under the Bankruptcy
Code.  "[S]tate law determines rights in property only to the extent such rights are not modified by
the Bankruptcy Code."  *In re Osborn*, 348 B.R. at 506.  *See also In re Nichols*, 440 F.3d 850, 853
(6th Cir. 2006) ("Bankruptcy laws have long been construed to authorize the impairment of
contractual obligations.").[12]

 Having determined that Ezell was correctly decided, this court turns to ECU's alternative
argument in this case, that the Hanging Paragraph only prohibits § 506(a)'s bifurcation when
applying § 1325(a)(5) and that its secured claim is still bifurcated when determining whether other
requirements of confirmation, including § 1325(a)(4), have been met.  This assertion does have some
facial appeal at first blush.  Clearly, the Hanging Paragraph begins with the clause "[f]or purposes
of paragraph (5)," which suggests that for *other* purposes or for *other* paragraphs, the language that
follows the introductory clause has no applicability; in other words, the phrase means "[f]or
purposes of paragraph 5 *only*."

 However, the introductory clause can not be construed in isolation but must be examined in
context with the remaining language of the amendment.  *See United States v. Brown*, 536 F.2d 117,
121 (6th Cir. 1976) (quoting *Richards v. United States*, 369 U.S. 1, 11, 82 S. Ct. 585, 591 (1962)
("[I]t is 'fundamental that a section of a statute should not be read in isolation from the context of

---

[12] Along this same line, the *Zehrung* court states that a secured creditor is entitled to its state law right
to claim a deficiency because it's rights are unmodified by § 506 in a surrender situation.  However, it is
§ 1322(b)(2) in conjunction with § 1325(a) which authorizes modification of a secured creditor's state law
rights.  *See In re Young*, 199 B.R. 643, 649 (Bankr. E.D. Tenn. 1996) ("[I]t is § 1325(a)(5)(B), not § 506(a)
which provides the authority for the "cramdown." [Citation omitted.] Section 506(a) simply governs the
allowance process for the secured status of a claim by supplying the method or formula for valuation, the
result of which is bifurcation or separation of the secured claim into its secured and unsecured components.
[] This bifurcation would have no effect on payment or treatment of the secured claim but for the authority
given a debtor under § 1325(a)(5) to cramdown the claim to its allowed secured amount.").  Neither
§ 1322(b)(2) nor § 1325(a)(5)(C) were modified by BAPCPA.  If Congress had intended to protect 910
Claims from modification, it could have done so by amending § 1322(b)(2) to extend the prohibition on
modifying a mortgage on the debtor's principal residence to 910 Claims.  It did not do so.

the whole (statute).'"").  After the introductory clause are the words "section 506 shall not apply to a claim described in [paragraph 5] . . . ."  The claim described in paragraph 5 is "each allowed secured claim provided for by the plan."  Inserting the word "only" into the phrase as suggested by ECU results in the following: "For purposes of paragraph (5) [only], section 506 shall not apply to [each allowed secured claim provided for by the plan] . . . ."

The problem with this reading is that paragraph (5) is the only paragraph in § 1325(a) that even references "allowed secured claim provided for by the plan" or even allowed secured claim. There is no other provision which could logically be read to mean "for this purpose" or "in this paragraph" section 506 *shall* apply to allowed secured claims since no other section governs the treatment of secured claims in a chapter 13 plan.

Furthermore, such a construction would be inconsistent with the statute's legislative history which states simply that a new paragraph has been added to § 1325(a) providing that § 506 does not apply to a 910 Claim.  *See* note 8 *infra* ("Section 306(b) adds a new paragraph to section 1325(a) of the Bankruptcy Code specifying that Bankruptcy Code section 506 does not apply to a debt incurred within the two and one-half year period preceding the filing of the bankruptcy case if the debt is secured by a purchase money security interest in a motor vehicle acquired for the personal use of the debtor within 910 days preceding the filing of the petition.").  There is no suggestion in the legislative history that this directive only applies to § 1325(a)(5) or that Congress intended for a 910 Claim to be bifurcated for purposes of applying all other Code sections.

More importantly, ECU's interpretation is inconsistent with § 506.  Under ECU's argument, it still has an unsecured claim as defined by § 506 when every provision but § 1325(a)(5) is considered.  According to ECU, when the surrender option is utilized, its secured value is the liquidation value that it will receive at a UCC foreclosure sale and its unsecured value is the deficiency owing after the sale.  However, as amended by BAPCPA, § 506(a) now specifies that the secured value of personalty in the chapter 7 or 13 of an individual is replacement value as of the date of the filing of the petition, with replacement value being defined as the price a retail merchant would charge for property of that kind if the property was acquired for personal, family, or household purposes, as in the present case. 11 U.S.C. § 506(a)(2).  In other words, § 506 no longer

15

provides ECU the deficiency claim that it would otherwise receive under state law.[13]  *See In re Ezell*, 338 B.R. at 341-42 ("[W]ere the court to find that a secured creditor whose collateral has been surrendered under Revised § 1325(a)(5)(C) is entitled to file either a secured or unsecured deficiency claim, the method of determining the amount of the allowed deficiency claim would be demonstrably at odds with Revised § 506(a) . . . .").

Finally, the premise which underlies ECU's argument, that its claim is bifurcated for all purposes but § 1325(a)(5), has no statutory support.  Prior to BAPCPA, it was necessary to bifurcate a secured claim in order to determine the amount of the allowed secured claim under § 1325(a)(5) since § 1325(a)(5)'s "allowed secured claim" was determined by reference to § 506(a).  *Rash*, 520 U.S. at 957.  This bifurcation resulted in an undersecured creditor having both an allowed secured claim and an allowed unsecured claim and it was clear that § 1325(a)(5) only satisfied the secured component.  As recognized by cases previously discussed, the impact of the Hanging Paragraph is that allowed secured claim is no longer defined by § 506.  Instead, it now appears that § 1325(a)(5)'s "allowed secured claim" simply means a claim that is secured under state law and otherwise allowed under federal bankruptcy law.  *See In re Montoya*, 341 B.R. 41, 44 (Bankr. D. Utah 2006) ("The existence of a claim is determined by non-bankruptcy substantive law, whereas valuation of the claim is determined by § 506."); *In re Brown*, 339 B.R. at 821 ("Because the 910 Claims are 'allowed' under § 502 and 'secured' by recourse to the underlying collateral, they are 'allowed secured claim[s]' as contemplated by § 1325(a)(5).").  This allowed secured claim is satisfied in full by the surrender option set forth in § 1325(a)(5)(C).  Thus, it is no longer necessary or required that the secured claim be bifurcated in the first instance.  While the assertion could be made that § 506's bifurcation occurs automatically in chapter 13 because chapter 5 of the Bankruptcy Code applies to chapter 13 cases, *see* 11 U.S.C. § 103, the Hanging Paragraph clearly provides that § 506 "shall not apply" to a 910 Claim.  The natural result of this directive is that no bifurcation of a 910 Claim ever occurs or that it has no effect even if it does take place.  In either event, it provides no support to ECU's assertion that it has an unsecured claim entitled to the treatment reserved for allowed

---

[13] As noted by the court in *Ezell*, under Tennessee law, a secured creditor may sell or otherwise dispose of any collateral, subject to certain procedural requirements, and following the disposition, the obligor is liable for any deficiency, which includes costs of disposition and attorneys' fees associated therewith.  *In re Ezell*, 338 B.R. at 342 n.13 (citing Tenn. Code Ann. §§ 47-9-610, 47-9-615(d)(2), 47-9-616(c)(5)).

16

unsecured claims in § 1325(a)(5)(4).

Based on the foregoing conflicts that a restrictive interpretation of the introductory clause of the Hanging Paragraph would present, this court is unable to conclude that ECU's interpretation was Congress' intention in this regard. "A court should look beyond the language of the statute . . . when the text is ambiguous or when, although the statute is facially clear, a literal interpretation would lead to inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Dorris v. Absher*, 179 F. 3d 420, 429 (6th Cir. 1999). "[W]hen two statutes conflict to some degree, they should be read together to give effect to each if that can be done without damage to their sense and purpose." *Muller v. Lujan*, 928 F.2d 207, 211 (6th Cir. 1991).

An interpretation of the introductory clause of the Hanging Paragraph that is equally supported by a straightforward reading of the statute  is that "for purposes of paragraph (5)" simply means "when applying paragraph (5)." *See In re Montoya*, 341 B.R. at  44 ("To give meaning to this phrase ["For purposes of paragraph (5)"], the court *must* consider § 1325(a)(5) when contemplating confirmation."). This construction is consistent with § 506 and presents no conflict with any other provision of the Bankruptcy Code. Furthermore, it is more logical that the clause is simply an instruction for applying the directive rather than a limitation of applicability since, as previously noted, no other provision in § 1325(a) addresses allowed secured claims. Accordingly, ECU's contention in this regard must be rejected.

IV.

In summary, the parties' stipulations in this case establish that ECU's claim satisfies the criteria of the Hanging Paragraph. Because the Hanging Paragraph prevents the application of § 506 to claims within its scope, ECU's secured claim is not bifurcated under § 506(a) and it holds only an allowed secured claim. Section 1325(a)(5)(C) provides that a permissible plan treatment of an allowed secured claim is surrender of the collateral securing such claim, which is the treatment proposed by the debtors herein. As such, ECU's objection to confirmation must be overruled. An order will be entered in accordance with this memorandum opinion so ruling.

# # #

17